UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2023 AUG -3 AM 11:08

CLERK

BY ____ʟᴀᴡ____
      DEPUTY CLERK

| | |
|---|---|
| MATTHEW RAYMOND MONGEON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:21-cv-00195 |
| ) | |
| KPH HEALTHCARE SERVICES, INC. ) | |
| d/b/a KINNEY DRUGS, ) | |
| ) | |
| Defendant/Third-Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| PRESCRIBE WELLNESS, LLC, TABULA ) | |
| RASA HEALTHCARE GROUP, INC., ) | |
| TABULA RASA HEALTHCARE, INC., ) | |
| VOICEPORT INTERNATIONAL CORP., ) | |
| ) | |
| Third-Party Defendants. ) | |

**OPINION AND ORDER GRANTING THIRD PARTY DEFENDANTS'
MOTION TO DISMISS OR TRANSFER VENUE**
(Doc. 28)

Plaintiff Matthew Raymond Mongeon ("Plaintiff") brings this case against Defendant KPH Healthcare Services, Inc., d/b/a Kinney Drugs ("KPH"), alleging he received thousands of unwanted automated telephone calls and text messages from KPH. Plaintiff asserts three causes of action: (1) violation of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227 (Count I); (2) violation of the Vermont Consumer Protection Act ("VCPA"), 9 V.S.A. § 2453 (Count II); and (3) invasion of privacy under Vermont common law.

On July 7, 2022, KPH filed a Third-Party Complaint against Prescribe Wellness, LLC ("Prescribe Wellness"), Tabula Rasa Healthcare Group, Inc. ("TRH Group"), Tabula Rasa Healthcare, Inc. ("TRH Inc."), and VoicePort International Corp.

("VoicePort"), entities that contracted with KPH to provide communications and messaging services. The Third-Party Complaint asserts claims for indemnification against VoicePort (Count I) and Prescribe Wellness (Count III), breach of contract against VoicePort (Count II) and Prescribe Wellness (Count IV), and successor liability against TRH Group and TRH Inc. (Count V).

Pending before the court is the September 16, 2022 motion to dismiss the Third-Party Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and the doctrine of *forum non conveniens* filed by Prescribe Wellness, TRH Group, and TRH Inc. (collectively, "Third-Party Defendants"). (Doc. 28.) KPH responded to the pending motion on November 16, 2022 (Doc. 39), and Third-Party Defendants replied on December 14, 2022. (Doc. 43.) After seeking leave from the court, KPH filed a sur-reply on April 21, 2023 (Doc. 48), at which time the court took the pending motion under advisement.

Plaintiff is represented by Joseph L. Gentilcore, Esq., and Joshua L. Simonds, Esq. KPH is represented by James P. Youngs, Esq., and Mark F. Werle, Esq. Prescribe Wellness, TRH Group, and TRH Inc. are represented by Brian A. Berkley, Esq., Gerald E. Arth, Esq., Matthew S. Borick, Esq., and Shannon M. Doughty, Esq. VoicePort is self-represented.

## I.   Plaintiff's Claims.

From January 2017 until November 2021, Plaintiff allegedly received over 5,000 text messages or telephone calls from KPH, including more than 4,000 in the two years preceding his Amended Complaint. Plaintiff alleges that the communications were intended for KPH's customers, that he had no business relationship with KPH, and that he did not consent to receive KPH's communications. He repeatedly asked KPH to stop contacting him. After Plaintiff spoke with a KPH representative in September 2019, KPH allegedly placed him on "the 'Do Not Contact' list maintained through Prescribe Wellness's prescription services portal and part of the outbound communications programs." (Doc. 23 at 6, ¶ 35.) Plaintiff alleges that despite KPH's representations that the communications would cease, he continued to receive calls and texts.

## II.     Allegations in the Third-Party Complaint.[1]

Plaintiff is a resident of Milton, Vermont. KPH is a corporation with its principal place of business in Gouverneur, New York. It operates pharmacies in Vermont, which use an automated telephone dialing system to notify customers via text message or artificial or prerecorded voice calls that their prescriptions are available for pickup.

Prescribe Wellness is a Nevada limited liability company. TRH Inc. is a Delaware corporation with its principal place of business in New Jersey. TRH Group is a Delaware corporation with its principal place of business in Moorestown, New Jersey. Upon information and belief, TRH Inc. acquired Prescribe Wellness in March 2019. TRH Inc. is allegedly Prescribe Wellness's agent or alter ego, a "mere continuation" of Prescribe Wellness, or "has otherwise assumed the liabilities of Prescribe Wellness by contract or by operation of law." *Id.* at 6, ¶ 41.

In December 2019, TRHC OpCo, Inc. ("TRHC OpCo"), a Delaware corporation and subsidiary or affiliate of TRH Inc., allegedly merged with Prescribe Wellness, leaving TRHC OpCo as the surviving entity. TRHC OpCo then changed its name to Tabula Rasa Healthcare Group, Inc. Upon information and belief, TRH Group is a corporate subsidiary or affiliate of TRH Inc. and the two entities "disregard corporate formalities and forms between them." *Id.* at 7, ¶ 51.

Upon information and belief, VoicePort is a Delaware limited liability company with its principal place of business in Rochester, New York. Prescribe Wellness and VoicePort provide customer outreach and communication services to other companies, including pharmacies such as Kinney Drugs.

From 2013 to 2019, KPH contracted with VoicePort to provide outbound communications and messaging services pursuant to three contracts the parties signed in 2013, 2014, and 2017 (the "VoicePort Agreements"). The VoicePort Agreements

---

[1] Because "[f]or purposes of . . . [R]ule [12(b)], the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference[,]" the court's recitation of the Third-Party Complaint's allegations includes facts derived from the Third-Party Complaint and the exhibits attached to it. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

3

contained "substantially identical provisions," including the "same General Terms and Conditions." *Id.* ¶ 25.

Pursuant to the VoicePort Agreements, VoicePort agreed to facilitate, manage, and make telephone calls and text messages to KPH customers with personalized prescription pick-up and refill information. It agreed that "it will perform the Services contemplated by this Agreement [i]n compliance with all applicable laws[.]" *Id.* ¶ 28 (first alteration in original) (internal quotation marks omitted) (quoting Doc. 23-4 at 4, ¶ 2). It further agreed that it will:

> (i) conduct business in a manner that reflects favorably at all times on the good name, goodwill and reputation of Customer [i.e., KPH], (ii) avoid deceptive, misleading or unethical practices that are or might be detrimental to Customer; [and] (iv) not publish or employ[], or cooperate in the publication or employment of, any misleading or deceptive advertising material with regard to the Company or the Company's products[.]

(Doc. 23 at 5, ¶ 29) (first and second alterations in original) (internal quotation marks omitted) (quoting Doc. 23-4 at 4, ¶ 3).

The VoicePort Agreements require VoicePort "to indemnify and hold KPH harmless"

> from any claim, demand, action or suit asserted by a third-party, and all finally awarded costs, liabilities, judgments, expenses and damages (including reasonable attorneys' fees) [. . .] suffered, sustained, incurred or paid by any such persons in connection with such third-party claims, to the extent arising out of, resulting from or related to . . . (iv) any breach by the Company of its representations, warranties or covenants set forth in this Agreement.

*Id.* ¶ 30 (quoting Doc. 23-4 at 4, ¶ 5(e). They also contain the following choice of law and venue clause:

> Law, Venue, Jury Trial[.] This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York, without regard to principles of conflict of laws. Any action arising out of or construing this Agreement shall be brought only in the state or federal courts located in Monroe County, New York.

(Docs. 23-2 at 4-5, ¶ 10; 23-3 at 4-5, ¶ 10; 23-4 at 5, ¶ 10.)

4

KPH alleges, upon information and belief, that in May 2018 VoicePort assigned the VoicePort Agreement to Prescribe Wellness, which assumed all of VoicePort's rights and obligations thereunder. The following year, in May 2019, KPH and Prescribe Wellness entered a "Master Services Agreement" (the "Prescribe Wellness Agreement"), pursuant to which Prescribe Wellness provided similar outbound communication services to those provided by VoicePort, including sending prescription refill reminders and pick-up notifications. (Doc. 23 at 5, ¶ 32.)

Pursuant to the Prescribe Wellness Agreement, Prescribe Wellness agreed to "indemnify KPH from any '[t]hird-[p]arty claim, suit, or proceeding arising out of, related to, or alleging: . . . (c) claims related to unauthorized disclosure or exposure of personally identifiable information or other private information.'" *Id.* at 6, ¶ 37 (quoting Doc. 23-5 at 4, ¶ 5.1). It further agreed that it will perform its contractual obligations in accordance with "all applicable governmental laws, regulations, orders, and other rules of duly constituted authority." *Id.* ¶ 38 (quoting Doc. 23-5 at 8, ¶ 9.10). The Prescribe Wellness Agreement contains the following choice of law and consent to personal jurisdiction clause:

> Choice of Law: This Agreement will be governed solely by the internal laws of the State of New York, without reference to any conflicts of law principle that would apply the substantive laws of another jurisdiction to the [p]arties' rights or duties. The parties consent to the personal jurisdiction of the federal and state courts of Onondaga County, New York.

(Doc. 23-5 at 8, ¶ 9.9) (emphasis in original).

KPH alleges that TRH, Inc. "and/or" TRH Group are the successors of Prescribe Wellness, that they assumed Prescribe Wellness's liabilities, and that they are thus each "liable to KPH for any error, omissions or breaches of contract by Prescribe Wellness." (Doc. 23 at 8, ¶ 56.) It asserts that this court has personal jurisdiction over Third-Party Defendants "given their general business activities in the State of Vermont" and "due to, among other things, their contractual relationship with . . . KPH, their contractual agreements to provide goods and/or services in the State of Vermont, and performance of

5

service under the contract within the State of Vermont and that directly serviced Vermont consumers." *Id.* at 3, ¶¶ 13-14.

### III. The Parties' Declarations.

In support of their motion to dismiss, Third-Party Defendants submitted a sworn declaration from Farah Madhat, PharmD, dated December 14, 2022. Dr. Madhat averred that she was employed by Prescribe Wellness from May 2016 until March 2019 in roles including the Vice President of Pharmacy, then by TRH from March 2019 until July 2022 as Executive Vice President, Pharmacist Provider Division, and as Chief Product Officer. She stated that Prescribe Wellness was never registered or domiciled in Vermont and does not maintain a physical presence, mailing address, bank accounts, employees, or independent contractors in Vermont.

She further averred that the Prescribe Wellness Agreement between KPH and Prescribe Wellness was not negotiated or executed in Vermont, and Prescribe Wellness entered no other contracts in Vermont. According to Dr. Madhat, Prescribe Wellness and TRH did not perform any work under the Prescribe Wellness Agreement in Vermont. KPH provided Third-Party Defendants with the names and contact information of KPH customers who were to receive phone calls or text messages. Third-Party Defendants played no role in generating this information. Dr. Madhat averred, "[a]ny telephone calls or text messages were made or sent by third-party vendors located outside of Vermont." (Doc. 43-1 at 3.)

In a sworn declaration submitted by KPH and dated April 21, 2023, Senior Director of Healthcare Operations for Kinney Drugs, Shannon Miller, PharmD, CDE, averred that she regularly met in person and via telephone with Prescribe Wellness representatives regarding the services it provided to KPH under the Prescribe Wellness Agreement. She averred that Prescribe Wellness employees visited KPH's offices and visited Kinney Drugs stores in New York. After Prescribe Wellness became TRH, she continued interacting with TRH employees in person, via telephone, and by email. According to Dr. Miller, Prescribe Wellness and TRH were "fully aware" that performance of the Prescribe Wellness Agreement required Third-Party Defendants to

handle the data of Vermont residents and communicate with those residents via telephone and text messages. (Doc. 48-1 at 2.)

Dr. Miller averred that "[i]t was always understood and generally accepted" between KPH, Prescribe Wellness, and TRH that the Prescribe Wellness Agreement covered all Kinney Drugs stores, and that a "large number of those stores were located in Vermont." *Id.* During the relevant contractual period, KPH had between twenty-one and twenty-four Kinney Drugs retail pharmacies in Vermont serving thousands of customers, including many who utilized the prescription synchronization and outbound call services provided by Prescribe Wellness and TRH. In addition to being aware that the Prescribe Wellness Agreement required them to regularly contact Vermont residents on behalf of Kinney Drugs' Vermont locations, Dr. Miller averred that Prescribe Wellness and TRH "did, in fact, regularly make calls and send text messages into the State of Vermont, to Vermont telephone numbers and Vermont residents, on behalf of Kinney Drug stores doing business in Vermont, further to those stores' business with those Vermont residents." *Id.*

## IV. Conclusions of Law and Analysis.

Third-Party Defendants ask the court to enforce the forum selection clauses in the VoicePort and Prescribe Wellness Agreements by dismissing the claims against them pursuant to the doctrine of *forum non conveniens*. They further seek dismissal of the Third-Party Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). They assert that their limited contacts with Vermont do not support the court's exercise of specific personal jurisdiction over them under the Due Process Clause.

### A. Whether the Forum Selection or Consent to Jurisdiction Clauses Bar Proceedings in This Court.

Observing that KPH does not challenge the validity of the VoicePort Agreement's forum selection clause (the "VoicePort forum selection clause" or the "forum selection clause") or Prescribe Wellness Agreement's consent to personal jurisdiction clause (the "Prescribe Wellness consent clause" or the "consent clause"), Third-Party Defendants urge the court to give these clauses controlling weight and find they warrant dismissal or

7

transfer of the pending action.[2] Although Third-Party Defendants argue that "the claims against them should be dismissed entirely under Rule 12(b)(2) and the minimum contacts[] test[,]" they also acknowledge that "[a]lternatively, the [c]ourt may transfer the claims to the proper forums (New York for some claims, and Florida for others) under the forum selection and applicable arbitration clauses." (Doc. 43 at 3, n.2.)

"[I]t is settled . . . that parties to a contract may agree in advance to submit to the jurisdiction of a given court" through forum selection clauses. *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315-16 (1964). In *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, the Supreme Court held:

> the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*. [28 U.S. §] 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer.

571 U.S. 49, 60 (2013). "Under this principle, 'a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute.'" *Rabinowitz v. Kelman*, 2023 WL 4688183, at *4 (2d Cir. July 24, 2023) (quoting *Fasano v. Li*, 47 F.4th 91, 100 (2d Cir. 2022)). Because the VoicePort forum selection clause and Prescribe Wellness consent clause point to state or federal court, either *forum non conveniens* or § 1404(a) may be the appropriate mechanism for enforcing the clauses.

### 1. Whether to Enforce the VoicePort Agreement Forum Selection Clause.

The VoicePort forum selection clause provides that "[a]ny action arising out of construing this Agreement shall be brought only in the state or federal courts located in Monroe County, New York." (Docs. 23-2 at 4-5, ¶ 10; 23-3 at 4-5, ¶ 10; 23-4 at 5, ¶ 10.) Pursuant to *Atlantic Marine*, the appropriate mechanism for enforcing the forum selection

---

[2] KPH does not challenge the validity of the forum selection clause or consent clause but argues that Third-Party Defendants improperly seek to enforce them pursuant to Fed. R. Civ. P. 12(b)(3). Because Third-Party Defendants' request for enforcement is based on the doctrine of *forum non conveniens* and not on Rule 12(b)(3), the court does not address enforcement under Rule 12(b)(3).

8

clause is through the doctrine of *forum non conveniens* if it points to a state forum and through § 1404(a) if it points to a federal forum.

The Second Circuit recently clarified that "[w]here the parties have contractually selected a [state or foreign] forum, . . . the forum selection clause substantially modifies the [general] *forum non conveniens* doctrine." *Rabinowitz*, 2023 WL 4688183, at *5 (quoting *Fasano v. Yu Yu*, 921 F.3d 333, 335 (2d Cir. 2019)). It held: "we employ a four-part framework when determining whether to dismiss a claim based on a forum selection clause under the modified doctrine of *forum non conveniens*." *Id.*

> At the first three steps, the court asks (1) "whether the clause was reasonably communicated to the party resisting enforcement," (2) "whether the clause is mandatory," that is, whether the parties are required to bring any dispute to the designated forum or simply permitted to do so, and (3) "whether the claims and parties involved in the suit are subject to the forum selection clause." *Martinez*, 740 F.3d at 217 (internal quotation marks omitted). If the answer to all three questions is yes, the clause is "presumptively enforceable." *Id.* (internal quotation marks omitted). At the fourth step, the court asks (4) whether the resisting party has rebutted that presumption by "making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* (internal quotation marks omitted).

*Id.*

"The threshold inquiry to determine whether the forum selection clause was reasonably communicated to the party resisting enforcement is generally met where the terms of the clause are 'plainly printed' in the contract and the party resisting enforcement had an opportunity to review the terms." *Williams v. Holiday Inn Club Vacations*, 2020 WL 6086647, at *7 (D. Vt. Mar. 10, 2020). As the forum selection clause is "plainly printed" in the VoicePort Agreement and the Agreement was signed by KPH representatives, including its Executive Vice President and CFO, the clause was "reasonably communicated" to KPH. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) (observing that neither party disputed whether a forum selection clause was "reasonably communicated" where it was "plainly printed" in the governing agreements).

The court must next "decide whether the parties are *required* to bring any dispute to the designated forum or simply *permitted* to do so." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007) (emphasis in original). Contracting parties use "mandatory" forum selection clauses to "agree in advance on a forum where any and all of their disputes must be brought to eliminate surprise of having to litigate in a hostile forum." *Id.* at 386. "A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language." *Id.* Alternately, "[a] so-called permissive forum clause only confers jurisdiction in the designated forum, but does not deny plaintiff his choice of forum, if jurisdiction there is otherwise appropriate." *Id.*

The VoicePort Agreement provides that "[a]ny action arising out of or construing this Agreement *shall* be brought *only* in the state or federal courts located in Monroe County, New York." (Doc. 23-3 at 5) (emphasis supplied). This forum selection clause is mandatory because it "incorporates obligatory venue language" requiring only certain New York courts to handle contractual disputes. *Phillips*, 494 F.3d at 386 (distinguishing the "mandatory force of the words 'are to be brought'" from permissive contractual language providing that disputes "may" be brought in certain fora). It "impart[s] the parties' clear intent that an award *must* be enforced *exclusively* in these fora." *Rabinowitz*, 2023 WL 4688183, at *6 (emphasis in original).

Although the forum selection clause is mandatory, in order for it to be presumptively enforceable, the claims and parties involved in KPH's third-party suit must be subject to the forum selection clause. The forum selection clause encompasses "[a]ny action arising out of or construing this [VoicePort] Agreement[.]" (Doc. 23-4 at 5, ¶ 10.) Because KPH's indemnification and breach of contract claims against VoicePort and its indemnification claim against Prescribe Wellness "aris[e] out of or constru[e]" the VoicePort Agreement, those claims and parties are subject to the mandatory forum selection clause. *Id.*; *see also Phillips*, 494 F.3d at 389 ("To 'arise out of' means 'to originate from a specified source,' and generally indicates a causal connection[.]")

(internal citations omitted) (quoting Webster's Third New International Dictionary 117 (1981)).

"If the answer to all three questions [under the four-step modified *forum non conveniens* framework] is yes, the clause is 'presumptively enforceable.'" *Rabinowitz*, 2023 WL 4688183, at *5 (quoting *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014)); *see also Martinez*, 740 F.3d at 217 (holding that a forum clause is presumptively enforceable if it "was communicated to the resisting party, has mandatory force[,] and covers the claims and parties involved in the dispute") (internal quotation marks omitted). Because the VoicePort forum selection clause was reasonably communicated to KPH, is mandatory, and encompasses KPH's claims against VoicePort and its indemnification claim against Prescribe Wellness, the clause is presumptively enforceable absent a "sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Rabinowitz*, 2023 WL 4688183, at *5 (internal quotation marks omitted) (quoting *Martinez*, 740 F.3d at 217).

Although KPH asserts that the VoicePort forum selection clause does not make venue improper in Vermont, it has not demonstrated that enforcement of the clause would be unjust or unreasonable. Nor has it argued that the clause is invalid or the product of fraud or overreaching. The forum selection clause must therefore be enforced either through dismissal of KPH's third-party claims against VoicePort and dismissal of its indemnification claim against Prescribe Wellness, or through transfer of those claims to a federal court located in Monroe County, New York.

Under *Atlantic Marine*, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." 571 U.S. at 62.

Whether the forum selection clause at issue is "valid" presents a threshold issue requiring resolution before the *Atlantic Marine* § 1404(a) analysis applies. *Id.* In the Second Circuit, the enforceability of a forum selection clause under § 1414(a) is governed by the same questions as the four-prong modified *forum non conveniens*

11

framework. *Phillips*, 494 F.3d at 383-84. Applying these same factors in the modified *forum non conveniens* context, the court has determined that the VoicePort forum selection clause is presumptively enforceable under § 1404(a) as well.

When a forum selection clause is presumptively enforceable, "the plaintiff's choice of forum merits no weight" and "the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atl. Marine*, 571 U.S. at 63. Because parties which agree to a forum selection clause "waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation[,]" the court "should not consider arguments about the parties' private interests." *Id.* at 64.

While the court may consider public interest factors, "those factors will rarely defeat a transfer motion, [and] the practical result is that forum-selection clauses should control except in unusual cases." *Id.* In this case, the claims subject to the forum selection clause may appropriately be transferred to federal court under § 1404(a). The court will allow KPH to indicate its preference between transfer pursuant to § 1404(a) and *forum non conveniens* dismissal.

### 2. Whether to Enforce the Prescribe Wellness Agreement Consent Clause.

The Prescribe Wellness consent clause provides that "[t]he parties consent to the personal jurisdiction of the federal and state courts of Onondaga County, New York." (Doc. 23-5 at 8, ¶ 9.9.) Like the VoicePort forum selection clause, whether the Prescribe Wellness consent clause is enforceable depends on the outcome of the modified doctrine of *forum non conveniens* analysis if the consent clause points to a state forum and on the *Atlantic Marine* § 1404(a) analysis if it points to a federal forum.

The consent clause in the Prescribe Wellness Agreement is also "plainly printed" in the contract and the Prescribe Wellness Agreement was signed by KPH's Executive Vice President and CFO. *Williams*, 2020 WL 6086647, at *7. The consent clause was therefore "reasonably communicated" to KPH. *Id.*

12

Unlike the forum selection clause, however, the consent clause in the Prescribe Wellness Agreement lacks "specific language of exclusion." *Rabinowitz*, 2023 WL 4688183, at *6. It does not "confer[] exclusive jurisdiction on the designated forum or incorporate[] obligatory venue language." *Phillips*, 494 F.3d at 386. Instead, it *permits* the parties to bring any disputes to Onondaga County, New York as the designated forum but does not *require* them to do so. It also does not prevent them from initiating litigation outside New York. *See Rabinowitz*, 2023 WL 4688183, at *7 (explaining that permissive contractual language "operate[d] simply as mutual consent to personal jurisdiction" and did not "suggest that personal jurisdiction cannot exist elsewhere").

Because the consent clause is permissive, it is not subject to the same presumption of enforceability as the VoicePort Agreement forum selection clause. *See id.* at *6 ("Forum selection clauses lacking any clear exclusionary or obligatory language–i.e., 'specific language of exclusion'–are . . . permissive and not subject to a presumption of enforceability.") (quoting *Glob. Seafood Inc. v. Bantry Bay Mussels Ltd.*, 659 F.3d 221, 225 (2d Cir. 2011)). Accordingly, it does not "trigger dismissal under step two of the modified *forum non conveniens* framework[.]" *Id.* Provided jurisdiction in Vermont is "otherwise appropriate[,]" the consent clause "does not deny [KPH] [its] choice of [state or foreign] forum[.]" *Phillips*, 494 F.3d at 386.

With regard to whether any claims subject to the consent clause may be transferred to a federal forum, "courts have generally limited the *Atlantic Marine* analysis to cases involving mandatory forum selection clauses[.]" *DataCatalyst, LLC v. Infoverity, LLC*, 2020 WL 1272199, at *3 n.4 (S.D.N.Y. Mar. 17, 2020) (observing that because "[a] party that files suit in a court outside the forum specified in a permissive forum selection clause does not flout any contractual obligation[,]" *Atlantic Marine*'s intent to prevent parties from disregarding their contractual obligation to bring suit in a particular forum is inapplicable); *see also Encompass Aviation, LLC v. Surf Air Inc.*, 2018 WL 6713138, at *6 (S.D.N.Y. Nov. 30, 2018) (applying a traditional § 1404(a) analysis to a permissive forum selection clause). In light of its permissive nature, the Prescribe Wellness consent clause is not analyzed under *Atlantic Marine* or entitled to any presumption of

13

enforceability. Whether to transfer the claim subject to the Prescribe Wellness consent clause requires the same inquiry as whether to transfer any remaining third-party claims that are not subject to the forum selection clause.

### 3. Whether Third-Party Defendants Are Entitled to Dismissal or Transfer of KPH's Remaining Claims Under the Doctrine of *Forum Non Conveniens* or § 1404(a).

Dismissal or transfer may also be appropriate with regard to KPH's remaining claims against Third-Party Defendants, which are not subject to the mandatory VoicePort forum selection clause. "The doctrine of *forum non conveniens* permits a court to dismiss a claim even if the court is a *permissible* venue with proper jurisdiction over the claim." *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 73 (2d Cir. 1998) (emphasis in original). Although § 1404(a) codified the *forum non conveniens* doctrine in cases where the defendant's desired alternative forum is a federal court, *forum non conveniens* remains applicable in the "rare instances where a state or territorial court serves litigational convenience best." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007).

In analyzing a general *forum non conveniens* motion, courts in the Second Circuit "follow[] the three-step inquiry set forth in *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73-74 (2d Cir. 2001) (*en banc*)[.]" *Wilson v. Eckhaus*, 349 F. App'x 649, 650 (2d Cir. 2009).

> At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum. At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at step three, a court balances the private and public interests implicated in the choice of forum.

*Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005) (internal citations omitted). "A defendant does not carry the day simply by showing the existence of an adequate alternative forum. The action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable." *Iragorri*, 274 F.3d at 74-75. The decision to dismiss a case on *forum non conveniens* grounds "lies wholly within the broad discretion of the district court and

14

should be reversed only if that discretion has been clearly abused." *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 46 (2d Cir. 1996) (internal quotation marks omitted).

Generally, at the first step, "a strong presumption [exists] in favor of the plaintiff's choice of forum[,]" *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255 (1981), particularly when the plaintiff has chosen to bring an action in his or her home forum, which is "presumed to be convenient." *Iragorri*, 274 F.3d at 71 (citing *Piper*, 454 U.S. at 255-56). The following factors are relevant to the court's determination of whether "a forum choice was likely motivated by genuine convenience":

> [1] the convenience of the plaintiff's residence in relation to the chosen forum, [2] the availability of witnesses or evidence to the forum district, [3] the defendant's amenability to suit in the forum district, [4] the availability of appropriate legal assistance, and [5] other reasons relating to convenience or expense. Circumstances generally indicative of forum shopping, that is, plaintiff's pursuit not simply of justice but of justice blended with some harassment, include [1] attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, [2] the habitual generosity of juries in the United States or in the forum district, [3] the plaintiff's popularity or the defendant's unpopularity in the region, or [4] the inconvenience and expense to the defendant resulting from litigation in that forum.

*Norex Petroleum Ltd.*, 416 F.3d at 155 (internal citations and quotation marks omitted).

KPH has its principal place of business in New York. It is not a Vermont company under any definition of that term. It initiated this action in Vermont despite the parties' agreement that New York law shall govern the relevant contracts, and despite their agreement to New York as a mandatory forum in one contract and their consent to personal jurisdiction in New York in the other. KPH's choice of Vermont as a forum appears to be motivated by convenience rather than forum shopping, because this suit is a third-party action stemming from the Plaintiff's underlying action against KPH in Vermont. Against this backdrop, New York is the more convenient forum and KPH's chosen forum is entitled only to limited deference.

At the second step of the *forum non conveniens* inquiry, the moving party "must demonstrate the availability of an adequate alternative forum." *Id.* at 157. "An alternative

15

forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Id.* (internal quotation marks omitted). "If there is no adequate alternative forum, the inquiry ends, and the motion to dismiss is denied." *PT United Can Co.*, 138 F.3d at 73 (citing *Piper Aircraft Co.*, 454 U.S. at 254 n.22). Here, because the parties consented to personal jurisdiction in New York and contractually agreed to bring certain claims there, Third-Party Defendants have satisfied the adequate alternative forum requirement. *See In re Hellas Telecommunications (Luxembourg) II SCA*, 555 B.R. 323, 347 (Bankr. S.D.N.Y. 2016) ("The Defendants have agreed to submit to the jurisdiction of the U.K. court. Therefore, the Defendants have established an adequate alternative forum.").

At the final step of the inquiry, the court weighs public and private interest factors. "The defendant bears the burden of establishing that . . . the balance of private and public interest factors tilts heavily in favor of the alternative forum." *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 189 (2d Cir. 2009). "The public interest factors include: (1) settling local disputes in a local forum; (2) avoiding the difficulties of applying foreign law; and (3) avoiding the burden on jurors by having them decide cases that have no impact on their community." *In re Hellas*, 555 B.R. at 348 (internal quotation marks omitted) (quoting *Maersk, Inc. v. Neewra, Inc.*, 554 F. Supp. 2d 424, 454 (S.D.N.Y. 2008)). "The private interest factors include: (1) the relative ease of access to evidence; (2) the cost to transport witnesses to trial; (3) the availability of compulsory process for unwilling witnesses; and (4) other factors that make the trial more expeditious or less expensive." *Id.* (internal quotation marks omitted) (quoting *Maersk, Inc.*, 554 F. Supp. 2d at 453-54).

The parties have identified no witnesses at this stage; however, because KPH's claims arise out of contracts negotiated in New York and KPH has its principal place of business in New York, it is likely that witnesses and evidence will be located in New York. Permitting KPH to prosecute its remaining claims in Vermont will require the parties to engage in "fractured litigation" involving separate proceedings in Vermont and New York. *Phillips*, 494 F.3d at 393 (observing that "the commencement of separate proceedings in two countries is a likely inconvenience to the parties"). This, of course,

may be inevitable because the underlying action is pending in Vermont. Litigating KPH's third-party claims in separate fora may not only be "inconvenient[,]" it may also "substantially impact [Third-Party Defendants'] ability to protect [their] rights and interests." *Allen-Sleeper v. Fed. Exp. Corp.*, 2010 WL 3323660, at *5 (D. Vt. Apr. 14, 2010). "Thus, the locus of operative facts as well as the interests of efficiency and fairness favor a New York forum." *N.Y. Marine*, 599 F.3d at 113. The three-step inquiry weighs in favor of dismissing KPH's remaining claims on *forum non conveniens* grounds.

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Because § 1404 "was designed as a federal housekeeping measure, allowing easy change of venue within a unified federal system[,]" *Piper Aircraft Co.*, 454 U.S. at 254 (internal quotation marks omitted), "[d]istrict courts [are] given more discretion to transfer under § 1404(a) than they [have] to dismiss on grounds of *forum non conveniens*[,]" *id.*, and "motions for transfer . . . are determined upon notions of convenience and fairness on a case-by-case basis." *Cuyahoga Equip. Corp. v. United States (In re: Cuyahoga Equip. Corp.)*, 980 F.2d 110, 117 (2d Cir. 1992) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

Where no forum selection clause governs the parties' dispute, "a district court considering a § 1404(a) motion . . . must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine*, 571 U.S. at 62.

> Factors relating to the parties' private interests include relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. Public-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law. The [c]ourt must also give some weight to the plaintiffs' choice of forum.

*Id.* at 62 n.6 (internal citations, alterations, and quotation marks omitted). It is the moving party's burden to prove by clear and convincing evidence that a transfer is proper under § 1404(a). *See N.Y. Marine & Gen. Ins. Co. v. Lafarge N.A., Inc.*, 599 F.3d 102, 113-14 (2d Cir. 2010).

As a threshold issue, venue is proper in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(c). Because Prescribe Wellness consented to the court's personal jurisdiction when it assumed VoicePort's rights and duties under the Voiceport Agreement and when it signed the Prescribe Wellness Agreement, the pending case "might have been brought" in the Western or Northern Districts of New York and transfer under § 1404(a) is permissible. *See Van Dusen v. Barrack*, 376 U.S. 612, 623 (1964) ("There is no valid reason for reading the words 'where it might have been brought' to narrow the range of permissible federal forums beyond those permitted by federal venue statutes") (quoting 28 U.S.C. § 1404(a)); *see also ErGo Media Cap., LLC v. Bluemner*, 2015 WL 6442252, at *2 (S.D.N.Y. Oct. 23, 2015) ("A party that consents to personal jurisdiction in a particular forum also consents to venue there.").

The court's transfer of the third-party claims subject to the mandatory forum selection clause, which arise out of the same operative facts, weighs heavily in favor of the transfer of KPH's remaining causes of action. *See N.Y. Marine*, 599 F.3d at 112 ("Among the factors to be considered in determining whether to grant a motion to transfer venue" is "the plaintiff's choice of forum"); *Vinci v. VF Outdoor, LLC*, 2018 WL 3360756, at *6 (D. Vt. July 10, 2018) (observing that "the court's prior transfer of several related claims, arising out of the same operative facts, . . . weigh[ed] heavily in favor of the transfer of the [plaintiffs'] remaining causes of action"); *APA Excelsior III L.P. v. Premiere Techs., Inc.*, 49 F. Supp. 2d 664, 668 (S.D.N.Y. 1999) ("It is well established that the existence of a related action pending in the transferee court weighs heavily towards transfer.") (collecting cases).

The same public and private factors supporting a *forum non conveniens* dismissal are relevant to the § 1404(a) analysis. For example, "[c]onsolidation in the [Western

District of New York] will be more efficient and cost effective for all involved, as opposed to pursuing parallel actions involving many of the same witnesses and documents in two different courts[.]" *Vinci*, 2018 WL 3360756, at *6. In light of these considerations, both "the convenience of the parties and witnesses" and "the interest of justice" are served by a transfer of KPH's remaining claims pursuant to § 1404(a). *N.Y. Marine*, 599 F.3d at 112.

B. **Whether the Court Has Personal Jurisdiction Over Third-Party Defendants.**

Regardless of whether the court enforces the forum selection and consent clauses, Third-Party Defendants alternately ask the court to dismiss KPH's claims for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Having determined that Third-Party Defendants are entitled to dismissal or transfer of all of KPH's claims against them, however, the court need not reach the issue of personal jurisdiction or KPH's request for jurisdictional discovery at this time. *See Fort Knox Music Inc. v. Baptiste*, 257 F.3d 108, 112 (2d Cir. 2001) ("The district court has th[e] power to transfer venue even if it lacks personal jurisdiction over the defendants.").

## CONCLUSION

For the foregoing reasons, Third-Party Defendants' motion to dismiss the Third-Party Complaint pursuant to Rule 12(b)(2) (Doc. 28) is DENIED WITHOUT PREJUDICE. Third-Party Defendants' motion in the alternative to dismiss all claims pursuant to *forum non conveniens* or to transfer all claims to the appropriate federal forum pursuant to § 1404(a) is GRANTED. Third-Party Defendants may elect between transfer pursuant to § 1404(a) or *forum non conveniens* dismissal within fourteen (14) days of this Opinion and Order.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 3rd day of August, 2023.

Christina Reiss, District Judge
United States District Court